## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELVIE OLEATHA PARNELL,

                Plaintiff,

                                                  Case No. 3:15-cv-1352-J-JRK

vs.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

### OPINION AND ORDER[2]

### I. Status

      Elvie Oleatha Parnell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of bipolar disorder, depression, osteoporosis, gastroesophageal reflux disease ("GERD"), irritable bowel syndrome ("IBS"), and hypothyroidism. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed February 8, 2016, at 188. Plaintiff filed her DIB application on February 18, 2011,[3] alleging an onset date of June 1, 2006, Tr. at 156-57, that was later amended to January 21, 2009, see Tr. at 42, 560. Plaintiff's application was denied initially, Tr. at 77, 78, 95-96, and upon reconsideration, Tr. at 79, 80, 101-02.

---

[1]      Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed February 8, 2016; Reference Order (Doc. No. 12), entered February 9, 2016.

[3]      On the same date, Plaintiff also applied for supplemental security income ("SSI"), Tr. 150-53, but that claim was denied for failure to meet the income requirement, Tr. at 81-84. The claim is not issue in this case.

After holding a hearing on February 10, 2012, Tr. at 36-75, an Administrative Law Judge ("ALJ") denied Plaintiff's claim in a decision issued on May 2, 2012, Tr. at 20-30, that became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 28, 2012, Tr. at 1-3.  But on appeal to this Court, the May 2, 2012 decision was reversed on September 10, 2013, and the case was remanded to the Commissioner for further administrative proceedings.  Tr. at 669-78 (September 10, 2013 Order, attached hearing transcript, and Judgment entered in Parnell v. Colvin, No. 3:13-cv-47-J-JBT).

On remand from this Court, the ALJ held a hearing on August 29, 2014, and testimony was offered by Plaintiff, who was represented by counsel, as well as by a vocational expert ("VE") and a medical expert, Dr. Donald Pollock, M.D., who is Plaintiff's treating psychiatrist.  Tr. at 554-98.  On December 3, 2014, the ALJ issued a Decision finding Plaintiff not disabled "at any time from . . . the alleged onset date, through December 31, 2011, the date last insured," and denying Plaintiff's claim.[4]  Tr. at 545; see Tr. at 529-46.

Plaintiff then requested review by the Appeals Council, Tr. at 770, and submitted to the Council additional evidence in the form of a memorandum by her attorney, Tr. at 523, 524; see Tr. at 771-74 (memorandum).  On September 18, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner.  Tr. at 519-21.  On November 10, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[4]       Although the ALJ acknowledged in the Decision that Plaintiff's alleged onset date had been amended to January 21, 2009, see Tr. at 530, 532, the ALJ misstated the onset date, later in the Decision (in the ultimate finding), as June 1, 2006, Tr. at 545.  The error appears inadvertent, and it is not at issue in this appeal.

Plaintiff raises two issues on appeal: (1) whether the ALJ "erroneously relied on the [VE's] response to an incomplete hypothetical question that did not include the need for [Plaintiff] to work in isolation"; and (2) whether the ALJ "erred in failing to articulate good cause for failing to credit the opinion of [Plaintiff's] long-time treating psychiatrist who actually testified at the remand hearing." Plaintiff's Brief (Doc. No. 14; "Pl.'s Br."), filed April 11, 2016, at 1; see id. at 9-25. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") on June 9, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[5]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step inquiry. <u>See</u> Tr. at 532-45.  At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of January 21, 2009 through her date last insured of December 31, 2011." Tr. at 532 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff "had the following severe impairments: disorders of the bladder; affective disorders; anxiety related disorders; and personality disorders." Tr. at 532 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 533 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform medium work . . . except [she] was limited to no more than simple, repetitive, routine tasks" and that she "needed to work in isolation with only occasional interaction with supervisors, co-workers, and the general public." Tr. at 534-35 (emphasis omitted).  At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 544 (emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age (fifty-seven (57) years old on the date last insured), "limited education," work experience, and RFC, and the ALJ determined that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 544 (emphasis and citation omitted).  Relying on the testimony of the VE, the ALJ identified as representative jobs a "Sweeper/Cleaner, Industrial"; a "Cleaner, Wall"; and a "Cleaner, Hospital." Tr. at 545 (some capitalization omitted).

The ALJ concluded that Plaintiff "was not under a disability, as defined in the Soda! Security Act, at any time from June 1, 2006, the alleged onset date, through December 31, 2011, the date last insured."[6]  Tr. at 545 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

---

[6]  As noted above, the ALJ misstated Plaintiff's alleged onset date in making this conclusion, Tr. at 545, despite having acknowledged earlier in the Decision that the date had been amended to January 21, 2009, see Tr. at 530, 532.

## IV.  Discussion

Below, the two issues Plaintiff raises are addressed in turn, and the undersigned concludes the Decision is due to be reversed on the basis of the first issue only, with the ALJ to conduct further proceedings regarding the apparent inconsistency between the RFC finding and the hypothetical question posed to the VE.

### A.  VE Hypothetical

An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy.  See Wilson, 284 F.3d at 1227.  When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE.  Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling" (internal quotation and citations omitted)); Wilson, 284 F.3d at 1227 (stating that "for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments" (citation omitted)).

Here, the ALJ described to the VE a hypothetical individual who was "restricted to medium work as defined in the regulations except with no more than simple, routine, repetitive tasks with no more than occasional interaction with supervisors, coworkers, and

the general public." Tr. at 591-92 (emphasis added).  In the Decision, as quoted above, the

ALJ's RFC finding included that Plaintiff could "perform medium work . . . except [she] was

limited to no more than simple, repetitive, routine tasks" and that she "needed to work in

isolation with only occasional interaction with supervisors, co-workers, and the general

public." Tr. at 534-35 (some emphasis omitted).

Plaintiff contends that "[t]he ALJ improperly relied on the VE's response to an

incomplete hypothetical question that did not match the limitations in the ALJ's [RFC]

assessment." Pl.'s Br. at 10.  Specifically, Plaintiff argues, "The ALJ's hypothetical question

to the [VE] differed from the . . . [RFC] assessment because the ALJ failed to include a need

to work in isolation in the hypothetical question." Pl.'s Br. at 12 (citing Tr. at 592).  The

omission is significant, in Plaintiff's view, because "[t]he addition of a need to work in isolation

coupled with the occasional interaction limitation is much greater than just an occasional

interaction limitation." Id. at 14.

Plaintiff points out that the Appeals Council acknowledged this omission in its Order

denying Plaintiff's request for review. Pl.'s Br. at 12 (citing Tr. at 519).  In concluding that this

omission did not warrant review of the Decision, the Appeals Council noted that "the [RFC]

finding concurrently finds [Plaintiff] capable of occasional interaction, indicating at least some

capacity to interact with others." Tr. at 519.  The Council further noted that "the duties of the

representative jobs cited in the Step 5 finding, such as the industrial sweeper position, do not

clearly indicate that work would be performed in ongoing contact with others." Tr. at 519.

Defendant's reasoning in the Response is similar to that of the Appeals Council;

essentially, that is, Defendant construes the isolation limitation in the RFC as equivalent to

the occasional-interaction limitation. See Def.'s Mem. at 5-9.  Defendant asserts that "the

ALJ[] defined 'in isolation' with the vocationally relevant terms 'occasional interaction.'" Id.

at 5.  In other words, according to Defendant, "the language describing occasional interaction with others explains the nature of the isolation intended."  Id. at 6.  Therefore, in Defendant's view, "the only real limitation for the RFC is the occasional interaction."  Id. at 5.

Upon review, the undersigned concludes the Decision is due to be remanded to the ALJ on this issue.  The phrase "work[ing] in isolation," as used by the ALJ in the RFC finding, is susceptible to multiple reasonable interpretations.  On the one hand, as Defendant contends, the phrase could mean simply working "with no more than occasional interaction with supervisors, coworkers, and the general public."  Def.'s Mem. at 5-8.  On the other hand, however, the phrase could refer to physical isolation, such as working alone in a separate room, as Plaintiff appears to argue.  See Pl.'s Br. at 12-16.  If the ALJ intended the latter meaning, then the hypothetical presented to the VE fails to incorporate all of Plaintiff's limitations.  Because this is not apparent from the record, judicial review is frustrated.  On remand, the ALJ must clarify the language in the RFC, and if necessary, pose a new hypothetical to the VE.

## B.  Assessment of Treating Psychiatrist

Plaintiff argues that "the ALJ failed to articulate good cause for not crediting the opinion of Dr. Poll[o]ck, Ms. Parnell's long-time treating psychiatrist, who even testified at the hearing on remand from this Court."  Pl.'s Br. at 16.

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  McNamee v. Soc. Sec. Admin., 164 F. App'x

919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440

---

[7]        A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

(11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Colon v. Comm'r of Soc. Sec., No. 6:14-cv-378-Orl-DNF, 2015 WL 5599896, at *4 (M.D. Fla. Sept. 22, 2015) (unpublished).

Here, Dr. Pollock has treated Plaintiff periodically since June 2006.  See Tr. at 360-389, 395-96, 487-90, 848-79, 881-84 (treatment notes).  In addition to treatment notes, the record includes overall assessments completed by Dr. Pollock on May 5, 2011, Tr. at 398-99, 401-12 (Mental RFC Assessment and Psychiatric Review Technique forms); on July 29, 2011, Tr. at 452-54, 457-59 (Treating Source Mental Status Report and duplicate); on

January 31, 2012, Tr. at 492 (letter to ALJ); and on February 22, 2012, Tr. at 494-96 (interrogatories).  Dr. Pollock also testified at the hearing before the ALJ on August 29, 2014. Tr. at 569-87.

Dr. Pollock opined, on May 5, 2011, that Plaintiff had marked limitations in, among other things, her ability to understand and remember very detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; and to accept instructions and respond appropriately to criticism from supervisors. Tr. at 398-99.  He indicated she had extreme difficulty maintaining social functioning.  Tr. at 411.  On July 29, 2011, Dr. Pollock opined Plaintiff had mild cognitive impairment, that she was oriented to place and person, and that she had a normal thought process, although her thoughts were "focused on the negative things, family and marital issues."  Tr. at 453.  Dr. Pollock stated Plaintiff's "[d]epression, anxiety, and cognitive impairment make her unable to work."  Tr. at 454.

In the letter to the ALJ on January 31, 2012, Dr. Pollock wrote as follows:

[Plaintiff] has been my patient since 2006.  The limitations that I assessed on May 5, 2011 have existed since at least January 21, 2009.

[Plaintiff] has severe depression, anxiety, mild cognitive impairment, and an underlying personality disorder.  While the severity of her symptoms may wax and wane over time, there has been no appreciable improvement in her condition since 2006.  She is compliant with all treatment recommendations. We have discussed electrocortical therapy (ECT), and she is considering it as a treatment option.

I believe placing her in a work environment, even a low stress, unskilled position with minimal pressures, would cause her mental health to decline.  I do not recommend that she attempt work at all, and would recommend her for disability.

Tr. at 492.

In responding to interrogatories on February 22, 2012, Dr. Pollock assigned Plaintiff a global assessment of functioning ("GAF") score of 45-49.  Tr. at 496.  He remarked that his treatment of Plaintiff has involved "a long history of trying different medications to attempt to relieve her severe depression and anxiety symptoms."  Tr. at 494.  He noted that he "also recommended counseling [and] a variety of other lifestyle changes."  Tr. at 494.  Dr. Pollock indicated Plaintiff has complied with his recommendations, including that Plaintiff "received counseling for several years."  Tr. at 494-95.  Dr. Pollock wrote that Plaintiff "trie[d] to follow through on [Dr. Pollock's] advice as best she can" regarding the need for exercise, but Plaintiff "sometimes finds it difficult" to do so, as a result of her lack of motivation resulting from depression.  Tr. at 495.

In addition, Dr. Pollock wrote in his interrogatory responses that Plaintiff's "medications seem to have helped with her irritability and anger outbursts but the deep depression, hopelessness, excessive worry/apprehension and other symptoms remain."  Tr. at 495.  According to Dr. Pollock, Plaintiff's "pervasive symptoms seem to be intractable to any meaningful improvement and unfortunately the longer the conditions persist, the more depressed and frustrated she gets by the lack of improvement in her mood."  Tr. at 495.  He noted Plaintiff "may have experienced some temporary improvement at various times throughout the course of [her] treatment but then she would always deteriorate back to baseline again," which was why Plaintiff's medications were changed so often.  Tr. at 496.  Dr. Pollock opined Plaintiff is not "emotionally stable enough to work anywhere."  Tr. at 495.

In his testimony at the August 19, 2014 hearing, Dr. Pollock discussed his treatment and opinions.  Regarding the absence of GAF scores on his treatment notes, Dr. Pollock stated he "use[s] the GAF score on the initial evaluation" and does not use it again unless asked to provide it.  Tr. at 577.  He explained, "I use my notes as reminders to myself of how

a person is doing and I get enough from my notes." Tr. at 577.  Dr. Pollock also explained

the focus of his treatment sessions:

> Focus in a session is more about how [Plaintiff] is dealing with the problems
> in the present[,] also assessing her mood which has been consistently
> depressed[,] and trying to get an idea of whether of whether the medication is
> working or not, looking at options for changes in her medication, those kind of
> more immediate focuses rather than reviewing her—her mental status in total
> at each visit.

Tr. at 572-73.

Dr. Pollock stated at the hearing that when his treatment notes indicate Plaintiff is

improving, this does not mean Plaintiff is able to handle full-time employment.  See Tr. at

574.  Instead, according to Dr. Pollock, such a statement in his treatment notes would mean,

for instance, "that [Plaintiff] wasn't sleeping all day and she might be getting out and doing

some yard work."  Tr. at 574.  Dr. Pollock explained that "what we're dealing with is ebb and

flow of her function which is at base inadequate, sometimes it's more inadequate, sometimes

it's less inadequate, but it's always inadequate."  Tr. at 574.  As to Plaintiff's lack of

hospitalization, Dr. Pollock stated that, in his view, "the only reason really to hospitalize

somebody is if they are about to hurt themselves or hurt anybody else."  Tr. at 579.

The ALJ devoted several pages of the Decision to discussing Dr. Pollock's treatment

and opinions.  See Tr. at 536-40, 542-44.  Ultimately, little weight was assigned to the

opinions, Tr. at 536, 538, 539, 543, which the ALJ found to be "vague and conclusory," Tr.

at 543, and not supported by the evidence in the record, Tr. at 536.  The ALJ "credited Dr.

Poll[o]ck's conclusions only to the extent that [Plaintiff] has limitations with social interaction

as a result of documented problems with mood and irritability."  Tr. at 539, 544.

Plaintiff contends that "[t]he ALJ relied on her own assumptions regarding the records,

even though Dr. Pollock explained his basis for his opinions in the testimony at the hearing."

Pl.'s Br. at 23.  According to Plaintiff, "Dr. Pollock's hearing testimony refuted the ALJ's reasons for rejecting his opinions."  Id. at 24.  For example, Plaintiff asserts that Dr. Pollock "explained what he meant when he said [Plaintiff] had improved[;] it did not mean she could go back into the workforce . . . ."  Id. at 24.  Plaintiff states that Dr. Pollock "admitted that he did not keep detailed records" and that he "wrote notes only to remind himself of what he needed to know from visit to visit as far as medications."  Id. at 23.

Upon review, notwithstanding Plaintiff's contentions, the undersigned finds the ALJ articulated good cause to discount Dr. Pollock's opinions, including on the basis that the opinions are conclusory and inconsistent with Dr. Pollock's own records and the evidence overall.  See Tr. at 536, 538, 542-44.  The ALJ's findings on this issue are supported by substantial evidence in the record, and they are not undermined by Dr. Pollock's hearing testimony.

Among other things, the ALJ accurately observed that Plaintiff's mental health treatment was "minimal."  Tr. at 542.  For instance, the ALJ remarked that Plaintiff's treatment with Dr. Pollock involved "no more than 15 minute monthly appointments with the goal of finding the right combination of medications."  Tr. at 542; see, e.g., Tr. at 372-89, 487-90 (treatment notes).[8]  Plaintiff did not see a therapist, except for perhaps a short period in 2010, despite Dr. Pollock's recommendation that she do so, the ALJ noted.  Tr. at 536; see, e.g., Tr. at 383, 385 (treatment notes).  The ALJ also remarked that Plaintiff "required no hospitalizations during the period at issue."  Tr. at 542.  The ALJ reasonably determined that

---

[8]     The ALJ also stated the treatment records reflect that "an average appointment lasted no more than 15 minutes." Tr. at 540 (emphasis added). Overall, the treatment notes support this finding, though it appears that the duration of the appointments varied; many were ten or fifteen minutes, but others were longer—including durations of twenty, twenty-five, and thirty-five minutes. See, e.g., Tr. at 372-89, 487-90.

this "lack of treatment belies the statements made by [Plaintiff] and Dr. Pollock regarding the intensity and persistence of [Plaintiff's] symptoms."  Tr. at 542.

The ALJ observed, moreover, that the treatment records show "improved symptoms with treatment, as one would expect given the type and frequency of treatment being received."  Tr. at 542; see, e.g., Tr. at 363, 364, 370-72, 385, 874, 875 (treatment notes). While Plaintiff's symptoms occasionally worsened, the ALJ noted the treatment records reflected a "situational" depression that became "more pronounced when she had familial or other stress."  Tr. at 542 (citation omitted); see, e.g., Tr. at 370-72, 385 (treatment notes).

The ALJ found that Dr. Pollock's treatment notes "fail to document problems with working or concentration."  Tr. at 543.  As to Dr. Pollock's conclusory opinion that Plaintiff is unable to work, the ALJ correctly remarked that such an opinion "is not a medical opinion under the . . . [R]egulations, but rather, is a legal conclusion left to [the ALJ.]" Tr. at 543 (citing 20 C.F.R. § 404.1527(e);[9] Social Security Ruling 96-5p).

In addition, the ALJ found that Dr. Pollock's "opinions are based in large part [on] the reports of [Plaintiff] alone."  Tr. at 543.  In contrast, according to the ALJ, "[t]he objective findings in the record, which are pulled directly from [Plaintiff's] treatment notes, reflect no more than moderate mental health limitations."  Tr. at 536.  The ALJ also found Dr. Pollock's conclusions "inconsistent with observations of other treating sources."  Tr. at 544.  The ALJ pointed, for instance, to the opinion of Dr. Atul M. Shah, M.D., who examined Plaintiff on November 13, 2013 and assigned a GAF score of approximately 50 to 60; the ALJ noted this score "is indicative of moderate symptoms."  Tr. at 536 (citation omitted); see Tr. at 891-94. The ALJ also cited a urological examination in which Plaintiff "was described as cooperative,

---

[9]        The ALJ actually cited "20 C.F.R. § 404.i527(e)(i)," Tr. at 543, which the undersigned construes as a citation to 20 C.F.R. § 404.1527(e).

not anxious, depressed, in acute distress or sickly." Tr. at 544; <u>see</u> Tr. at 511 (examination on November 15, 2011 by Dr. Sagar R. Shah, M.D.). Furthermore, the ALJ pointed to a neurologic evaluation that "revealed that [Plaintiff] was alert and oriented times 3 with no impairment of recent or remote memory, normal attention span and ability to concentrate." Tr. at 544 (citation omitted); <u>see</u> Tr. at 512 (evaluation on November 15, 2011 by Dr. Shah).

The undersigned concludes there is no error with respect to this issue, as the ALJ's assessment of Dr. Pollock's opinions is supported by substantial evidence.

### V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)     Clarify what is meant by the phrase "to work in isolation," as stated in the RFC finding in the December 3, 2014 Decision;
>
> (B)     If necessary, re-pose a hypothetical to the VE that accounts for all of Plaintiff's limitations; and
>
> (C)     Take such other action as may be necessary to resolve these claims properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 30, 2017.


JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record